Filed 2/11/26  P. v. Roots CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C101849, C102557 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2019-0005151) |
| v. | |
| JONTELL JAYMAR ROOTS, | |
| Defendant and Appellant. | |

In this consolidated appeal, defendant Jontell Jaymar Roots appeals from the denial of his petition for resentencing under Penal Code section 1172.6 (case No. C101849) and a judgment entered on a guilty plea (case No. C102557).[1]  Appointed counsel filed a brief requesting our independent review under *People v. Wende* (1979) 25 Cal.3d 436.  Separately, Roots filed a supplemental brief contending that:  (1) he is

---

[1]  Undesignated statutory references are to the Penal Code.

factually innocent, and the trial court wrongly refused to consider a motion for a new trial; (2) defense counsel was ineffective; (3) a motion to disqualify the trial judge was improperly denied; (4) his guilty plea was not knowing and voluntary; and (5) the factual basis of his plea was false testimony by the prosecution's key witness.

Regarding his appeal from the order denying his section 1172.6 petition, Roots is entitled only to review of issues raised in his supplemental brief. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 231-232 (*Delgadillo*).) Roots has not raised any issue related to that order in his supplemental brief. Even exercising our discretion to conduct an independent review, we see no basis in the present record on which to disturb the trial court's ruling.

Regarding the appeal from the plea and judgment, Roots waived his right to appeal as part of his plea. We conclude his waiver was knowing, intelligent, and voluntary and therefore dismiss the appeal.

## BACKGROUND

An information filed in 2019 charged Roots with murder (§ 187, subd. (a)) and alleged that he personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). The information further alleged that Roots had served a prior prison term. (Former § 667.5, subd. (b).)

The facts of the underlying offense are described in our prior appellate opinion, *People v. Roots* (Jan. 27, 2022, C092570) (nonpub. opn.), which we cite only to summarize the background of the case. A witness, R.A., saw Roots engaged in a heated conversation with the victim, Lonnel Broadnax, who punched Roots and ran away. Surveillance video showed two figures following Broadnax, neither of whom was Roots. R.A. saw Roots get into a white SUV with a driver and chase Broadnax. Approximately four to five minutes later, R.A. heard 10 to 15 rapid pops that sounded like gunshots. (*Ibid.*)

Two witnesses in a residence heard gunshots and saw a man firing into a parking lot. One witness saw the man run toward a white compact car. When the witnesses went outside, three men in a white compact car pulled up and asked if the witnesses had seen their cousin. When one of the witnesses said a man had run away, the men told the witnesses they did not see "anybody" or "anything." (*People v. Roots*, *supra*, C092570.)

Police found Broadnax's body in the parking lot. He had been shot 32 times and died as a result. Nine-millimeter shell casings found at the scene were marked by Glock-type firing pins. Approximately an hour and a half after the shooting, a message posted on Roots's social media account stated, "G26 wit 30 850." A police detective testified that "G26" referred to a Glock 26, a nine-millimeter handgun; "wit 30" referred to a high-capacity, extended magazine; and "850" was the price of the firearm. Before the shooting, Roots posted videos of himself on social media, one showing him holding a Glock handgun with an extended, high-capacity magazine and another showing him pointing a firearm with an extended magazine at the camera and referring to a 30-round high-capacity magazine. (*People v. Roots*, *supra*, C092570.)

The jury convicted Roots of second degree murder and found true that he discharged a firearm causing great bodily injury or death. After denying Roots's motions for a new trial and to strike the firearm enhancement, the trial court sentenced Roots to 40 years to life in state prison, consisting of 15 years to life for murder and 25 years to life for the firearm enhancement. The court dismissed the prior prison term enhancement.

In 2022, this court vacated the judgment and the trial court's order denying Roots's motion for a new trial, concluding that the trial court had abused its discretion by failing to conduct an independent review of the evidence in ruling on the motion for a new trial. We remanded the matter to the trial court to hear and determine the motion for a new trial. (*People v. Roots*, *supra*, C092570.)

3

On April 8, 2024, pursuant to an agreement, Roots pleaded guilty to voluntary manslaughter (§ 192, subd. (a)) and admitted personal use of a firearm (§ 12022.5, subd. (a)), as charged in the People's amended information allowed by the trial court. The agreement called for Roots to be sentenced to the upper term of 11 years in state prison for the voluntary manslaughter charge and the upper term of 10 years for the firearm enhancement, for an aggregate sentence of 21 years. To permit imposition of the upper term under section 1170, subdivision (b), Roots admitted two aggravating factors under California Rules of Court, rule 4.421(a)(1) (the crime involved great violence) and rule 4.421(b)(2) (defendant's crimes are numerous or of increasing seriousness). Counsel for the parties stipulated to the trial transcript as the factual basis for the plea. Roots waived his appellate rights, with the exception of a challenge to presentence custody credits. Roots also waived the right to file a petition for resentencing under section 1172.6. He admitted that he was "an actual shooter and actual killer in this case" and acknowledged that his admission would mean that section 1172.6 does not apply to him.

The trial court sentenced Roots in accordance with the plea. It ordered Roots to pay the minimum mandatory fees and assessments and $5,192.54 in victim restitution. It awarded him presentence custody credit of 1,812 actual days and 272 days of conduct credit.

On July 24, 2024, Roots filed a petition for resentencing under section 1172.6. The trial court denied the petition by ex parte order, explaining that Roots had waived the right to appeal, had waived the right to file a section 1172.6 petition, and admitted to being the actual shooter. Roots timely appealed from this order, and the appeal was docketed as case No. C101849.

On December 24, 2024, this court granted Roots's request under the constructive filing doctrine for permission to file a belated notice of appeal challenging the April 8, 2024 judgment, and we deemed his notice of appeal to be timely. The notice of appeal

4

contained a request for a certificate of probable cause, stating reasons why Roots sought to withdraw his plea. This appeal was docketed as case No. C102557, and we ordered case Nos. C101849 and C102557 consolidated. On January 10, 2025, the trial court granted Roots's request for a certificate of probable cause.

DISCUSSION

Appointed counsel for Roots filed a brief asking this court to conduct an independent review of the record to determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d 436.) Counsel advised Roots of his right to file a supplemental brief within 30 days after the opening brief was filed. Roots filed a supplemental brief.

In *Wende*, our state Supreme Court held that an appellate court must review the entire record in direct appeals where appointed counsel submits a brief raising no specific issues or describing the appeal as frivolous. (*People v. Wende*, *supra*, 25 Cal.3d at pp. 440-442; *Delgadillo*, *supra*, 14 Cal.5th at p. 221.) This procedure applies "to the first appeal as of right and is compelled by the constitutional right to counsel under the Fourteenth Amendment of the United States Constitution." (*Delgadillo*, at p. 221.)

A Court of Appeal must also consider the contentions raised in a defendant's supplemental brief. As our Supreme Court explained in *People v. Kelly* (2006) 40 Cal.4th 106, "when a Court of Appeal affirms a judgment in a *Wende* appeal in which the defendant has filed supplemental contentions, the appellate court necessarily must have considered and rejected those contentions. In accordance with the constitutional requirement of 'reasons stated,' such an opinion must reflect the contentions and the reasons that they fail, just as the opinion would reflect these points if they were raised by counsel." (*Id.* at p. 120.)

In *Delgadillo*, our state high court held that *Wende*'s procedures do not apply to a trial court's order denying a petition for postconviction relief under section 1172.6. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 221-222.) In such cases, when a defendant files a

5

supplemental brief, "the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Id.* at p. 232.)  The court, however, is not required to conduct an "independent review of the entire record to identify unraised issues," although it has discretion to do so.  (*Ibid.*)

I.

We begin with Roots's appeal challenging the April 8, 2024 judgment.  In his supplemental brief, Roots argues that:  (1) he is factually innocent, and the trial court should have ruled on his new trial motion; (2) his trial counsel was ineffective in failing to pursue the disqualification of the trial judge and to marshal evidence that would have exonerated him; (3) the trial court erroneously denied his disqualification motion; (4) his plea was not knowing or voluntary; and (5) the factual basis of his plea was based on the perjured testimony of the prosecution's key witness.

Following our review of these contentions and an independent review of the record, we conclude that Roots's appeal should be dismissed because he knowingly and voluntarily entered into a plea agreement in which he waived his right to appeal. "Appellate waivers contained within plea agreements are generally enforceable." (*People v. Becerra* (2019) 32 Cal.App.5th 178, 186.)  "Defendants . . . benefit from plea agreements by gaining concessions from the People.  [Citation.]  The benefits of a plea agreement would be eliminated if courts disallowed the waiver of the right of appeal to which the parties have agreed." (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1658.)

"To be enforceable, a defendant's waiver of the right to appeal must be knowing, intelligent, and voluntary." (*People v. Panizzon* (1996) 13 Cal.4th 68, 80; see also *People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 400.)  "Waivers may be manifested either orally or in writing.  [Citation.]  The voluntariness of a waiver is a question of law which appellate courts review de novo." (*Panizzon*, at p. 80.)

Here, Roots was represented by counsel at the plea hearing.  Counsel told the trial court:  "I did get a chance to meet and confer with Mr. Roots.  Mr. Roots indicated that

6

he would take the deal, which was 21 years." Counsel also reported that "Mr. Roots'[s] suggestion [is] that we resolve the case today if we can." A discussion followed between the trial court and counsel for the parties regarding Roots's concerns about the amount of presentence custody credits he would receive. Counsel stated that Roots was prepared to move forward with the plea, and "the only issue is the credit." To resolve that issue, the trial court proposed that "what we could say is [Roots] waives all the appellate rights, other than credits." The People agreed to the proposal. When the trial court then asked Roots if he wished to proceed, he responded: "I mean, yes. I just want to get a clear understanding exactly what's – so are you saying that I get all my credits but I waive my appeal, is that what you're saying?" The trial court explained the number of credits it would award Roots "if you decide that you want to take voluntary manslaughter with use of a gun." Roots replied: "I am willing to take that." Defense counsel subsequently stated, "I believe Mr. Roots would accept the offer. And he's – and he said he's willing to waive all of the appellate issues as to this matter, except for the credits."

The trial court asked Roots whether he understood that he was going to be sentenced to 21 years on the charges; whether he had enough time to speak to his attorney; and whether he understood that: 21 years was the maximum sentence on the charges; he would be released on parole after serving his sentence; the conviction qualified as a strike; and the court would impose a $300 restitution fine, a $300 suspended parole revocation fine, a $30 criminal assessment, a $40 court security fee, and $5,192.54 in victim restitution. Roots answered "Yes" to these questions. The court obtained Roots's specific waivers of his constitutional rights to trial, confrontation, and cross-examination of witnesses as well as his rights to present a defense and against self-incrimination. In response to the court asking Roots whether he had any questions about his rights, whether anyone had made any threats or secret promises to induce him to plead guilty, and whether he was under the influence of substances, Roots answered, "No." Roots pleaded guilty to the manslaughter charge and admitted the firearm

7

enhancement. The court found Roots knowingly, intelligently, and voluntarily waived his constitutional rights.

The trial court granted the People's oral motion to amend the information to charge voluntary manslaughter with a firearm enhancement and two aggravating factors. Roots admitted the aggravating factors. The court sentenced Roots in accordance with the plea agreement. In doing so, the court said: "Mr. Roots, in doing part of the agreement with this is you are waiving your appellate rights, except for the issue regarding credits. [¶] Do you understand that, sir?" Roots answered, "Yes." The court continued, "And you agree to that?" Roots answered, "Yes." This record demonstrates that Roots knowingly and voluntarily pleaded guilty and waived his right to appeal. (See, e.g., *People v. Berkowitz* (1995) 34 Cal.App.4th 671, 676.)[2]

Roots contends that he agreed to plead guilty solely because he felt he "had no other choice," after the trial court purportedly ignored this court's direction to rule on a motion for a new trial "without consequence." He further argues that "the plea was his only relief," because he presented evidence of constitutional violations by the prosecution and direct evidence exonerating him, but he "was still railroaded." He cites no record evidence in support of these contentions, and nothing in them persuades us that the clear relinquishment of his rights and acceptance of the plea agreement, as reflected in the transcript of the plea colloquy, were coerced, unknowing, or involuntary.

The scope of Roots's appellate waiver extended to all issues except for his

---

[2] In *People v. Orellana* (2022) 74 Cal.App.5th 319, the appellate court declined to infer that an oral waiver of appellate rights was a "fully informed, bargained-for term of the plea agreement" where "the support in the record for the waiver of the right to appeal [was] limited to a short, oral colloquy between the defendant and the judge *after* the judge had already set forth the 'terms and conditions upon which [the defendant was] willing to plead no contest to.' " (*Id.* at p. 331.) Here, in contrast, the waiver of appellate rights was a prominent part of the parties' discussion with the trial court before the court set forth the specific terms of the proposed plea.

presentence custody credits.  Roots does not challenge his credit award on appeal.  Accordingly, we dismiss the appeal in case No. C102557.

II.

Turning to the trial court's denial of Roots's section 1172.6 petition, the supplemental brief Roots filed does not address that order.  Moreover, the record demonstrates that Roots waived the right to file a petition for section 1172.6 relief, expressly admitted he was the actual killer, and conceded that section 1172.6 was inapplicable.  Accordingly, we will affirm the trial court's order denying the petition.

DISPOSITION

Roots's appeal from the plea and judgment is dismissed.  The order denying the petition under section 1172.6 is affirmed.


                                       /s/                

                                        FEINBERG, J.


We concur:


     /s/               
RENNER, Acting P. J.


     /s/               
MESIWALA, J.